UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
UNITED STATES OF AMERICA,                          :
                                                                            :
             -against-                                              :
                                                                            :     SHORT FORM
ABRAXAS J. DISCALA,                                    :     MEMORANDUM & ORDER
     Also known as "AJ DiScala,"                      :
MARC WEXLER, IRA SHAPIRO,                    :     14-cr-399 (ENV)
MATTHEW BELL,                                           :
CRAIG JOSEPHBERG,                                  :
     Also known as "Jobo,"                              :
KYLEEN CANE, DARREN GOODRICH,     :
DARREN OFSINK, VICTOR AZRAK, and :
MICHAEL MORRIS,                                       :
                                                                            :
                                        Defendants.       :
-------------------------------------------------------------- X

VITALIANO, D.J.

Jury selection in this case is scheduled to start on April 3, 2018. The government and defendant Kyleen Cane have filed evidentiary motions *in limine*.[1] Dkt. Nos. 399, 426, 441, 461, 479, & 491. Having considered the submissions of the parties, Dkt. Nos. 413, 419, 436, 443, 450, 452, 460, 462, 467, 482, 491, 500, 524, & 527, and argument having been heard, the motions *in limine* are resolved in the manner and for the reasons as set forth below.[2]

1. First Government Motion in Limine

| Motion | Ruling |
|--------|--------|
|        |        |

---

[1] Defendant DiScala subsequently served and filed an *in limine* motion of his own, which was *sub judice* at the time of this decision.
[2] For the reasons set forth at the status conference on March 9, 2018, the trial of defendant Michael Morris was severed from the trial beginning April 3, 2018. In any subsequent trial involving Morris, the Court will hear argument seeking modification of these rulings for issues of prejudice peculiar to him.

| | |
|---|---|
| (A) The government's motion, pursuant to Federal Rules of Evidence 401-403, or in the alternative, 404(b),[3] to admit evidence of a prior business relationship between Abraxas DiScala and Kyleen Cane. | (A) First up, to the extent that the defense oppositions reiterated their then pending motions to suppress, then those arguments are now academic. The rulings that follow, therefore, apply only to documents or things that survived suppression and to the anticipated testimony of witnesses.<br><br>Neither Cane or DiScala appear to contest the admissibility of evidence, generally, which relates to their prior dealings. As such, any evidence of their dealings are admissible, except as to dealings relating to Regenicin, to show how they came to be involved with each other and to join in the alleged conspiracy, along with any underlying substantive criminal conduct. This evidence is probative, not unduly prejudicial and, admissible under Rule 403.<br><br>The objection to similar evidence regarding Cane and DiScala's dealings with respect to shares of Regenicin is somewhat marginal. Though, it too tends to explain how Cane and DiScala came to be involved in their business dealings with each other and the charged conspiracy. Regenicin, however, does appear to have a separate |

---

[3] Unless otherwise indicated, all rule references will be to the Federal Rules of Evidence and further citation will be omitted.

| | |
|---|---|
| | structure and does relate to a different period of time. Nonetheless, it would not be too great a stretch to conclude that such proffered evidence satisfies the test for admissibility as direct evidence. *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000). Alternatively, since the evidence is probative of a common scheme or plan, such an offer would be admissible under Rule 404(b). The proffer is not unfairly prejudicial and, to the extent that there is any prejudice at all, that prejudice would be properly and effectively mitigated by an appropriate limiting instruction if requested. *See, e.g., United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996); *United States v. Levy*, 731 F.2d 997, 1002 (2d Cir. 1984). This latter evidence relating to Regenicin is admissible under Rule 404(b). |
| (B) The government's motion, pursuant to Rules 401-403, or in the alternative, Rule 404(b), to admit evidence of contemporaneous business dealings involving DiScala, Cane, and Craig Josephberg in "Company A" and "Company B." | (B) Cane and DiScala oppose this portion of the government's first motion in limine, arguing that the proffered evidence is misleading, irrelevant, and prejudicial.<br><br>The subject business dealings in Companies A & B include Josephberg, Darren Goodrich, and Marc Wexler; relate to conduct that occurred at roughly the same time as the Cubed scheme; and involve the use of |

| | |
|---|---|
| | escrow accounts in a manner as similarly alleged in Cubed. This is direct evidence of the charged crimes, and arises "out of the same transaction or series of transactions as the charged offense" and is "inextricably intertwined with the evidence regarding the charged offense." *United States v. Hsu*, 669 F.3d 112, 118-19 (2d Cir. 2012); *United States v. Kaiser*, 609 F.3d 556, 570-71 (2d Cir. 2010); *United States v. Barrett*, 153 F. Supp. 3d 552, 567 (E.D.N.Y. 2015). The evidence is clearly relevant to the case, and its probative value outweighs any potential prejudice to the defendants. The evidence is admissible as direct evidence of the charged crimes. |
| (C) The government's motion, pursuant to Rules 401-403, or in the alternative, Rule 404(b), to admit evidence of Cubed trading through "nominee accounts" by Kyleen Cane. | (C) Granted as unopposed. |
| (D) The government's motion, pursuant to Rules 401-403, or in the alternative, Rule 404(b), to | (D) Cane and DiScala argue that the trading records are irrelevant, and in any event, are "cumulative, prejudicial, and distracting." Dkt. No. 413 at 12-14. |

4

| | |
|---|---|
| admit evidence of trading through offshore accounts by Kyleen Cane in a company called Crown Alliance Capital Ltd. ("CACL"). | With the exception of a discrete subset of this proffered evidence, the defense has the better of the argument. As Cane notes, neither she nor anyone else has ever been charged in connection with any irregularities involving CACL. More importantly, to the extent that the evidence has relevance, it is, essentially, cumulative of other evidence. Moreover, the otherwise uncharged references to CACL and Cane's broader use of "Legacy Brokers" run the unnecessary risk of confusing the jury by sparking a mini-trial about uncharged manipulations of CACL stock.<br><br>However, as to the admissible subset of evidence, the government may use other evidence described at pages 15 and 19 of its motion, regarding Cane's contact with the Legacy Broker in connection with Cubed stock. This portion of the evidence is necessary to complete the story of her dealings in that stock, which is one of the charged crimes. This evidence is not prejudicial. |
| (E) The government's motion, pursuant to Rules 401-403, or in the alternative, Rule 404(b), to admit evidence of an extramarital affair by Michael Morris with | (E) In this trial, only DiScala opposes the use of this evidence by the government, arguing, in sum and substance, that the "nature of the personal relationship" between Morris and the witness is "completely irrelevant and unnecessarily inflammatory." Dkt. No. 419 at 13. |

5

| | |
|---|---|
| government witness "Halcyon Broker 1." | The proffered evidence is relevant to how Halcyon Broker 1 came to be involved in the proffered stock fraud scheme and how she came to know and work with Josephberg. It is direct evidence of the formation of the charged conspiracy. It is neither inflammatory nor prejudicial with respect to defendants to be tried on April 3rd. However, the ruling is subject to reconsideration at any trial that includes defendant Morris. |
| (F) The government's motion, pursuant to Rules 401-403, or in the alternative, Rule 404(b), to admit evidence of Josephberg and Morris's histories as traders: (1) Josephberg's disciplinary history; (2) a purported fraud that Morris and Josephberg perpetrated through a company called Cell Therapeutics; and (3) Morris's disciplinary history. | (F) It is not clear at this juncture precisely what portion of this evidence the government intends to proffer and for what purpose or purposes. Accordingly, the Court will consider the proffer at the time of trial. |
| (G) The government's motion, pursuant to Rules 401-403, or in the alternative, Rule 404(b), to | (G) DiScala opposes the government's motion on this point, arguing that the proposed evidence is both irrelevant and prejudicial. The government seeks to |

6

| | |
|---|---|
| admit evidence of DiScala's alleged gambling habit. | introduce, at a minimum, testimony about a gambling debt that DiScala refused to pay, to "explain[], in part, why at least one co-conspirator who is expected to testify at trial decided to step away from DiScala[]" during the Cubed scheme.<br><br>Since its significant prejudice far outweighs the minimal probative value of this evidence, the motion is denied. |

2. Second and Third Government Motions in Limine

| | |
|---|---|
| (A) The government's motion, pursuant to Rules 401-403, or in the alternative, Rule 404(b), to admit approximately 30 text messages between Witness 1 and DiScala that reference both the companies mentioned in the indictment and other public companies. | (A) DiScala opposes the proffered text evidence on the grounds that the other public companies are not "inextricably intertwined" with the companies referenced in the indictment; not proper direct evidence of the crimes; more prejudicial than probative; and, alternatively, that it is improper 404(b) evidence. Nor, he says, should the government be permitted to draw the teeth of its own witness.<br><br>The government seeks introduction of the evidence on the ground that it is inextricably intertwined with, and necessary to complete the story of, the charged overarching conspiracy. In the alternative, the government argues that the proffered evidence is |

admissible under Rule 404(b) to show the "criminal nature of the relationship between Witness 1 and DiScala;" DiScala's "plan, preparation, and knowledge" as to his manipulation of the companies named in the indictment; and to elicit impeachment evidence to avoid the perception that it has concealed evidence from the jury. Dkt. No. 461 at 7-8.

The text messages, to the extent that they relate to companies that the indictment charged had stocks which were manipulated by any of the co-conspirators allegedly in furtherance of the conspiracy, are clearly direct evidence of the charged crimes, and admissible on a Rule 401-403 analysis. Redaction of the text messages of any reference to companies not identified in the indictment would, as the government argues, "materially alter the meaning and import of the communications[.]" Dkt. No. 482 at 4.

It may fairly be said that, to complete the story of the charged conspiracy, the government will need to explain how DiScala and Witness 1 came to know each other, and the text messages do provide "important context and background to the scheme and the relationship" between DiScala and Witness 1. Dkt. No.

| | |
|---|---|
| | 461 at 7. Additionally, text message evidence of any manipulation of other companies, while uncharged, or not, furthering the goals of the conspiracy are properly admissible as direct evidence. Any prejudicial effect of these text messages is more than outweighed by the probative value of this evidence. Admission as direct evidence will be permitted. |
| (B) The government's motion, pursuant to Rules 401-403, or in the alternative, Rule 404(b), to admit limited background testimony from Witness 1 as to his and DiScala's manipulation of 5 public companies not referenced in the Superseding Indictment. | (B) DiScala opposes this testimony for the same reasons discussed immediately above in 2(A).<br><br>For the reasons set forth in ruling in 2(A), the Court will allow Witness 1 to testify in a brief background fashion as to the manipulation of five public companies perpetrated by DiScala and Witness 1. Beyond brief is cumulative and will not be permitted. |
| (C) The government's motion, pursuant to Rules 401-403, or in the alternative, Rule 404(b), to admit text messages between Kyleen Cane and an attorney who worked at her law firm regarding potential buyers for Northwest, the | (C) Cane opposes the introduction of these text messages as irrelevant, but if found relevant, then cumulative. The government asserts that the texts are "direct evidence of the charged fraud offenses" and "inextricably intertwined with Cane's later control and manipulation of Cubed stock." Dkt. No. 491 at 7. |

9

| | |
|---|---|
| company that would later become Cubed. | More specifically, the government contends that these messages are relevant to Cane's "knowledge and intent," and also show that, even if Northwest shareholders did not deal directly with Cane, that she "was aware of and directed" the activities of the associates with whom they did deal. *Id.* at 9-10.<br><br>Contrary to Cane's opposition, the texts are plainly relevant, as they tend to show that Cane directed her associate to quote stock shares and lead into the story of how the other co-conspirators came into the Cubed "picture." It is non-cumulative evidence of charged crimes and will be admitted on that basis. Any unfair prejudice in admitting these texts is, assuming there is any, marginal. |

3. <u>Kyleen Cane's Motions in Limine</u>

| Motion | Ruling |
|---|---|
| (A) Kyleen Cane's motion, pursuant to Rules 806 & 807, to admit: (1) phone call excerpts from DiScala's cell phone gleaned from government wiretaps & (2) text messages from DiScala's cell | (A) The government and DiScala both oppose this motion, albeit for different reasons.<br><br>First, it appears that Cane has misapplied the Rule of Completeness as to the recordings and text messages. The Rule is intended to ensure that statements are not distorted and that they are presented in full, to avoid |

| | |
|---|---|
| phone gleaned from government search warrants. | misleading a jury. The recordings and text messages that Cane contends should be admitted to complete a communication otherwise partially admitted are themselves complete communications, and do not complete partially admitted communications. Rule 106, therefore, does not supply an independent basis for their admission.[4]<br><br>Cane's other attempts to work around the hearsay obstacle in her stated strategy to shift all blame from herself to DiScala all fail. As the government observes, the evidence she proffers is, in the ordinary course, the type of evidence offered by the government to establish guilt, namely, communications made in furtherance of a claimed conspiracy or made by a party opponent. As to Cane, DiScala is not a party opponent nor does she have any right or responsibility to pursue criminal charges of conspiracy against DiScala. So, she cannot offer these statements allegedly made in furtherance of a conspiracy as an exception to the hearsay rule. Nor are they with respect to her, the admissions of a party opponent. The only party in this action that is her party opponent is the |

---

[4] Indeed, Cane's Reply to her First Motion in Limine, Dkt. No. 452, cites no case-law rebutting the opposition's.

11

| | |
|---|---|
| | United States of America. Separately, she has demonstrated nothing that would bring these communications within the confines of the residual exception to the hearsay rule.<br><br>Of course, Cane might be able to offer these communications for something other than the truth of what they assert, that is, for a non-hearsay purpose. Should a declarant, for example, be called to testify at trial, these statements could be used by her to impeach and discredit the witness's testimony. The government advises, however, that it has no current plan to call any of these witnesses to the stand, meaning that this avenue also appears foreclosed. Should circumstances change, though, Cane might yet have the opportunity to draw the jury's attention to them. For now, though, she has provided no appropriate basis for their admission and her in limine application seeking permission to offer them at trial is denied. |
| (B) Cane's motion, pursuant to Rules 806, & 807: (1) opposing "opinion testimony" from government witness Oremland; (2) opposing providing summary | (B)(1) Kyleen Cane's motion to preclude Oremland, the government's expert witness, from offering "an opinion regarding the legality of the defendant's conduct" is granted without opposition. Dkt. No. 460 at 3. |

| | |
|---|---|
| charts prepared under Federal Rule of Evidence 1006 to be submitted to the jury during deliberations; and (3) requesting use of a limiting instruction to the jury in connection with Oremland's testimony as a "summary/expert witness." | But, Oremland, of course, may testify to provide background information and to clarify terms, concepts, and regulatory requirements, as the government requests. Dkt. No. 460 at 7.<br><br>(B)(2) Provided that the charts are properly admitted under Rule 1006, with appropriate instructions as to the jury's "responsibility to determine whether the charts accurately reflected the evidence presented," such charts can be submitted to the jury. *United States v. Pinto*, 850 F.2d 927, 935 (2d Cir. 1988). Indeed, admission of the charts themselves into evidence is not required. Second Circuit case law supports the submission of charts to the jury as long as the Court provides the jury with proper instructions to the effect that it may not consider the charts as evidence.[5] *United States v. Casamento*, 887 F.2d 1141, 1151 (2d Cir. 1989). It should be noted, however, that until a chart is presented to the Court, a final ruling as to prejudice is reserved.<br><br>(B)(3) Cane's request for the use of a limiting instruction prior to Oremland's testimony is unnecessary and is |

---

[5] The cases cited by Cane do not counsel a different result. For example, *United States v. Arboleda*, 20 F.3d 58, 62 (2d Cir. 1994), is inapposite – there, the jury asked for, listened to, and took notes about the prosecution's rebuttal summation regarding a witness. Summary charts are not summations.

13

| | |
|---|---|
| | denied. As the government has recognized, the Court gave an expert testimony instruction in *United States v. Kershner*, 13-cr-452 (ENV), which should be appropriate here. The Court will give an instruction at the close of trial in accordance with Sand, <u>Modern Federal Jury Instructions</u>, Instruction 7-21. |
| (C) Cane's motion, pursuant to Rules 806, & 807, to preclude the testimony of government witnesses Edgerton, Godfrey, Scoggins, and Washington. | (C) As the government asserts, the testimony is probative, and goes to the heart of whether Cane "controlled free-trading stock held in the names of others." Dkt. No. 491 at 1. The proposed testimony from Edgerton, Godfrey, Scoggins, and Washington is relevant and probative of Cane's place in the Cubed scheme. The testimony is not, as the government correctly observes, "unfairly prejudicial," Dkt. No. 491 at 7. Cane's motion to preclude their testimony is denied. |

So Ordered.

Dated: Brooklyn, New York
      March 19, 2018

                                      /s/ Hon. Eric N. Vitaliano
                                      ERIC N. VITALIANO
                                      United States District Judge